UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESLIE JEPPESEN,

    Plaintiff,

v.                                            Case No:   2:15-cv-774-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Leslie Jeppesen's Complaint (Doc. 1) filed on December 11, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED IN PART** and **REVERSED AND REMANDED IN PART** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

      **A.     Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.   Procedural History

Plaintiff filed applications for disability insurance benefits and for supplemental security income asserting an onset date of August 25, 2010. (Tr. at 32). Plaintiff's disability insurance benefits application was denied initially on October 3, 2011, and on reconsideration on November 22, 2011. (Tr. at 121-22). A hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans on March 20, 2014. (Tr. at 50-101). The ALJ issued an unfavorable decision on July 17, 2014. (Tr. at 29-49). The ALJ found Plaintiff not to be under a disability from August 25, 2010, through the date of the decision. (Tr. at 43).

On October 26, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 11, 2015. Defendant filed an Answer (Doc. 12) on February 18, 2016. Both parties filed memoranda in support of their positions. (Docs. 23-24). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 16). This case is ripe for review.

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can perform other work of the sort found in the national economy. *Packer*, 542 F. App'x at 891 (citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2015. (Tr. at 34). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 25, 2010, the alleged onset date. (Tr. at 34). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cerebrovascular accident, chronic pain, fibromyalgia, arthritis, degenerative disc disease, and degenerative joint disease. (Tr. at 34). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 36).

After review of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

3

except claimant is limited to only occasional work in close proximity to moving mechanical parts." (Tr. at 36).

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a telemarketer and appointment clerk, finding that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 42). Specifically, the ALJ stated that "the vocational expert testified that the claimant has past work as a Telemarketer, DOT #299.357-014, which is performed at the sedentary exertional level and has an SVP of 3; and Appointment Clerk, DOT #237.367-010, which is performed at the sedentary exertional level and has an SVP of 3." (Tr. at 42).[2] The ALJ stated that "[t]he vocational expert testified that a hypothetical individual with the above RFC would be able to perform the jobs of both telemarketer and appointment clerk." (Tr. at 42). Accordingly, in comparing the Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff was able to perform it as generally performed. (Tr. at 42).

Because the ALJ determined at step four that Plaintiff could perform past relevant work, the ALJ did not proceed to make findings for step five. (*See* Tr. at 42-43). The ALJ concluded that Plaintiff was not under a disability from August 25, 2010, through the date of the decision. (Tr. at 43).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

(1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff argues three issues on appeal:

1. Whether the ALJ erred in evaluating the severity of the Plaintiff's mental impairments and failed to provide corresponding mental limitations in the Plaintiff's [RFC].

2. Whether the ALJ failed to properly evaluate the treating source opinion of Dr. Hightower, the Plaintiff's treating psychologist.

3. Whether substantial evidence documenting the Plaintiff's right upper extremity manipulative limitations conflicts with the lack of manipulative limitations found in the ALJ's RFC assessment.

(Doc. 23 at 1). The Court addresses each of these issues in turn below.

5

A. The Severity of Plaintiff's Mental Impairments

Plaintiff first contends that the ALJ erred by failing to find her mental impairments to be severe. (Doc. 23 at 13). Defendant disagrees, arguing that "[a]s long as the ALJ finds that a claimant has at least one severe impairment, the analysis proceeds to step three." (Doc. 24 at 5 (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987))). Defendant argues that because the ALJ found that Plaintiff had severe impairments at step two, the ALJ did not err on this ground. (*See* Doc. 24 at 5).

Upon review, the Court agrees with Defendant. At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison*, 814 F.2d at 588. While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Nevertheless, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as

6

"severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ made a determination that Plaintiff suffered from the following severe impairments: cerebrovascular accident, chronic pain, fibromyalgia, arthritis, degenerative disc disease, and degenerative joint disease. (Tr. at 34). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. The only requirement is that the ALJ considered Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. Specifically, in making his RFC determination, the ALJ stated that:

> the undersigned *has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned *has also considered opinion evidence* in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 36) (emphasis added). The Court specifically notes that the ALJ considered Plaintiff's mental impairments and the medical evidence associated with them in determining Plaintiff's RFC. (*See* Tr. 36-42). Moreover, the Court notes that the ALJ specifically found that Plaintiff's medically determinable mental impairments of depression/anxiety and PTSD were non-severe. (Tr. at 34).

Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's impairments, whether severe or not, when he considered the evidence of record. Thus, regardless of whether the ALJ erred in this conclusion that Plaintiff's mental impairments were

non-severe, the record nevertheless demonstrates that the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments. Therefore, the ALJ applied the correct legal standard. *See Heatly*, 382 F. App'x at 825. Accordingly, the Court affirms the ALJ's decision as to his analysis at step two.

      **B.**      **The Weight Given to Plaintiff's Treating Psychiatrist, Dr. Pauline Hightower**

The Court next addresses the weight given to Plaintiff's treating psychiatrist, Dr. Pauline Hightower.

Plaintiff contends that the ALJ erred in giving Dr. Hightower's opinion little weight. (Doc. 23 at 18). Plaintiff contends that "[w]hen properly analyzed, the evidentiary record substantially supports Dr. Hightower's findings, which in turn, establish that the Plaintiff suffers from disabling psychological limitations." (*Id.*). Specifically, Plaintiff points to her GAF scores and Dr. Hightower's mental status examinations as demonstrating that the ALJ incorrectly concluded that Plaintiff only has minor limitations. (*Id.* at 19). Additionally, Plaintiff alleges that the ALJ relied on dated information by asserting that "notes from late 2011 and early 2012 show no clinical signs or observations of mental illness and appear to merely annotate the claimant's subjective reports." (*Id.* at 20 n.9 (citing Tr. at 39)). Plaintiff states that "[t]he ALJ's reliance on the lack of evidence during 2011 and early 2012 belies the fact that he did not issue a hearing decision until July 2014 and must consider the probative value of the remaining two and half years of medical evidence." (*Id.*).

Defendant disagrees, arguing that "the ALJ considered Dr. Hightower's opinion and properly assigned it little weight because it was inconsistent with and unsupported by the medical evidence in the record, including Dr. Hightower's own treatment notes." (Doc. 24 at 13 (citing Tr. at 41)). Defendant states that, as noted by the ALJ, the "examination notes throughout

8

the relevant period show that Plaintiff was pleasant and cooperative, her mood was normal, her affect was appropriate, her thought content, thought processing, and psychomotor activity were unremarkable, and her social interaction and attention span were normal." (Doc. 24 at 14 (citing Tr. at 38, 41, 607, 613)). Additionally, Defendant states that "Plaintiff received little to no treatment for her mental impairments until she began seeing Dr. Hightower in August 2013, *three years after* her alleged disability onset date." (Doc. 24 at 14 (emphasis in original) (citing Tr. at 34-35, 39)). Defendant further points out that the ALJ noted that Plaintiff's daily activities did not support Dr. Hightower's limitations. (*Id.* at 14). Additionally, although not articulated by the ALJ, Defendant states that Dr. Hightower's opinion was based on a limited treatment history. (*Id.*). Similarly, Defendant also contends that Dr. Hightower did not identify any clinical or diagnostic finding to support the severe limitations she opined. (*Id.* at 15).

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). When evaluating a medical source, the factors to be considered by an ALJ include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id*. (citations omitted).

For treating physicians, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241. When an ALJ elects to disregard the opinion of a treating physician, he or she must clearly articulate the reasons. *Id.* An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (quoting *Sharfarz*, 825 F.2d at 279). In situations where an ALJ "articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In this case, the ALJ stated the following in reviewing Dr. Hightower's opinion:

> Dr. Hightower opined in December 2013 that the claimant suffered marked to extreme limitations in several areas related to concentration and persistence, adaptation, and social interaction based on the claimant's low GAF score and multiple diagnoses (27F). The undersigned gives this opinion little weight as it is not supported by the weight of the medical evidence and greatly overstates the claimant's limitations. As noted above, repeated examination over the course of several years showed minor mental abnormalities and the claimant retained the ability to perform a wide range of daily activities within her physical limitations.

(Tr. at 41).

In this case, the Court finds that the ALJ articulated specific reasons for not according Dr. Hightower's opinion controlling weight. *See Poellnitz*, 349 F. App'x at 502. Specifically, the ALJ stated that (1) repeated examination over the course of several years showed minor mental abnormalities; (2) Dr. Hightower's opinion was not supported by the weight of the medical evidence and greatly overstated Plaintiff's limitations; and (3) Plaintiff retained the ability to perform a wide range of daily activities within her physical limitations. (Tr. at 41). Upon review, however, the Court finds that the ALJ's specifically articulated reasons are not supported by substantial evidence. *See Poellnitz*, 349 F. App'x at 502.

First, the Court cannot find that substantial evidence supports the ALJ's conclusion that repeated examination over the course of several years showed only minor mental abnormalities. (*See* Tr. at 41). On this point, the Court acknowledges that medical records from 2011 and 2012 appear to show only minor mental abnormalities. For instance, records from Lee Memorial Health System dated November 25, 2011 showed normal neurological functioning. (Tr. at 480). Similarly, records from June 2012 showed a normal mental status. (Tr. at 648). Those records noted that Plaintiff was oriented to time, place, and person and that her mood and affect were appropriate. (Tr. at 648). The records also showed that Plaintiff's recent and remote memory were intact and that her attention and concentration were normal. (Tr. at 648). Additionally, language function – including naming, repetition, and spontaneous speech – were noted to be normal. (Tr. at 648). Similarly, Plaintiff's fund of knowledge and vocabulary were appropriate. (Tr. at 648). While the above-cited medical records seem mostly normal and, thus, appear to the support the ALJ's conclusion, a review of only these records ignores the substantial medical evidence of record from December 2012 to the date of the decision showing more than minor mental abnormalities.

For instance, the ALJ noted that in December 2012, Plaintiff "reported to the ER with an altered mental status." (Tr. at 38). The ALJ stated that the "[m]ental examination showed claimant to be pleasant and cooperative. Her mood was normal but intermittently sad. Affect was appropriate. Thought content, thought processing, and psychomotor activity were unremarkable. Social interaction and attention span was normal. Claimant appeared well and was discharged." (Tr. at 38). A closer review of those records, however, shows that Plaintiff was hospitalized for three days. (Tr. at 610). In fact, an addendum to the records states that "[t]he patient was planned to be sent home yesterday but was still somewhat anxious and showing irritability, so I asked for a psychiatry consult. Dr. Dutchak stopped by here today and she agreed to send the patient home with close follow up to an outpatient psychiatrist in the Ruth Cooper Center." (Tr. at 610). Thus, this record shows that the treating doctors kept Plaintiff an extra day in the hospital due to her mental status. (*See* Tr. at 610). Moreover, the doctors specifically recommended follow up treatment based on her mental condition. (*See* Tr. at 610). Furthermore, even at discharge, Plaintiff was still diagnosed with "altered mental state." (Tr. at 609).

Additional records show that Plaintiff followed up with treatment at the Ruth Cooper Center. (Tr. at 663-83). These records also appear to show more than minor mental abnormalities. (*See* Tr. at 663-83). Indeed, records from January 2013 show that Plaintiff had impaired short-term memory, impaired long-term memory, and fund of knowledge. (Tr. at 669). Judgment and insight were noted to be poor. (Tr. at 669). Mood and affect were noted to be depressed. (Tr. at 669). Additional records from February 2013 show a diagnosis of organic hallucinations syndrome and unspecified affective psychosis. (Tr. at 682). By October 2013, Plaintiff appeared to have made some improvements. (*See* Tr. at 675). For instance, only short-

term memory was noted to be impaired. (Tr. at 675). Similarly, judgment and insight had improved to fair from poor. (Tr. at 675). Nevertheless, Plaintiff was still noted to be tangential and circumstantial in her thoughts. (Tr. at 675). Moreover, Plaintiff's mood and affect were noted to be depressed and constricted. (Tr. at 675).

As noted above, substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote*, 67 F.3d at 1560. Further, if supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards*, 937 F.2d at 584 n.3. In this instance, however, the Court cannot ignore the significant evidence of record cited above demonstrating that Plaintiff had more than minor mental abnormalities. Thus, the Court cannot accept the ALJ's reason for discrediting Dr. Hightower's opinion on this ground as the ALJ's reason is not supported by substantial evidence of record.

The second reason given by the ALJ for discrediting Dr. Hightower's opinion was the ALJ's conclusion that Dr. Hightower's opinion was not supported by the weight of the medical evidence and greatly overstated Plaintiff's limitations. (Tr. at 41). The Court finds, however, that this reason is also not supported by substantial evidence.

Specifically, in August 2013, Dr. Hightower diagnosed Plaintiff with major depressive disorder, posttraumatic stress disorder, and generalized anxiety disorder. (Tr. at 769). In October 2013, Defendant appeared with symptoms of depression, anxiety, and cognitive impairment. (Tr. at 760). Similar symptoms were noted in November 2013 (Tr. at 755) and early 2014 (Tr. at 854-859). Furthermore, a mental capacity assessment completed by Dr.

13

Hightower evaluated Plaintiff in the areas of sustained concentration and persistence, social interaction, and adaptation. (Tr. at 771-72). Dr. Hightower opined that Plaintiff had "marked" limitations for carrying out short and simple instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and maintaining socially appropriate behavior. (Tr. at 771-72). Dr. Hightower opined that Plaintiff had "extreme" limitations in carrying out detailed instructions; performing activities within a schedule and maintaining regular attendance; completing a normal workday without interruptions from psychologically based symptoms; performing at a consistent pace; responding appropriately to changes in work setting; and setting realistic goals or making plans. (Tr. at 771-72). Dr. Hightower also opined that Plaintiff would likely have an extreme number of absences from work. (Tr. at 771).

As discussed above, the medical records from 2012 and 2013 show that Plaintiff had more than minor abnormalities. Dr. Hightower's records show that Plaintiff suffered from significant mental issues such as major depressive disorder, posttraumatic stress disorder, and generalized anxiety disorder. (Tr. at 769). These diagnoses are at least consistent with records from the Ruth Cooper Center and records from her hospitalization, which records show that Plaintiff suffered from depression and anxiety. (Tr. at 610, 669, 675). Thus, contrary to the ALJ's finding, the Court finds that Dr. Hightower's opinion is consistent with and bolstered by the medical evidence of record, especially the medical evidence of record from late 2012 through the date of decision. *See Phillips*, 357 F.3d at 1241.

14

Moreover, the Court finds that Dr. Hightower's opinion does not appear to greatly overstate Plaintiff's limitations. Specifically, Dr. Hightower opined that Plaintiff had various marked and extreme limitations. (Tr. at 771-72). Upon review, however, the limitations from Dr. Hightower's opinion do not appear to be inconsistent with issues noted in the records from the Ruth Cooper Center, which records show impairments to Plaintiff's short-term and long-term memory along with impaired judgment and insight. (Tr. at 669, 675). Furthermore, the fact of Plaintiff's in-patient hospitalization for a mental issues only serves to support Dr. Hightower's opinion that Plaintiff has significant mental issues. *See* Tr. at 610. At the very least, the above-cited medical evidence of record certainly does not support findings contrary to those made by Dr. Hightower. *See id.* Accordingly, the Court finds that the evidence of records does not support the ALJ's finding that Dr. Hightower's opinion greatly overstated Plaintiff's limitations.

The third reason given by the ALJ was that Plaintiff retained the ability to perform a wide range of daily activities within her physical limitations. On this point, it is unclear to the Court how this conclusion could support a finding that Plaintiff's treating psychiatrist is entitled to little weight when her opinion concerns Plaintiff's *mental* impairments. Simply stating that Plaintiff can perform daily activities based on her physical limitations does not demonstrate why Dr. Hightower's opinion was incorrect or why it was entitled to little weight as to mental limitations. Thus, the Court finds that this reason given by the ALJ is also not supported by substantial evidence.

In sum, the Court finds that the reasons articulated by the ALJ do not establish "good cause" to give little credit to Dr. Hightower's opinion. *See Phillips*, 357 F.3d at 1240-41. Because the ALJ erred on this ground, the Court reverses and remands the decision of the Commissioner. Upon remand, the ALJ need not give any particular weight to Dr. Hightower's

15

opinion as Plaintiff's treating psychiatrist. Instead, the Commissioner must re-evaluate the weight given to Dr. Hightower's opinion, state what weight is given to Dr. Hightower's opinion, and explain the reasons for giving Dr. Hightower's opinion such weight.

### C. The ALJ's RFC Assessment of Plaintiff

The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The ALJ must determine a plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945(e). In this case, because the Court finds that the ALJ erred in determining the weight given to Plaintiff's treating psychiatrist, Dr. Hightower, and because a re-determination of the weight given to Dr. Hightower's opinion may impact the ALJ's RFC determination on remand, the Court directs the Commissioner, on remand, to fully consider Plaintiff's mental and physical impairments in combination with her other medically determinable impairments of record to determine Plaintiff's RFC.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is hereby **AFFIRMED IN PART** pursuant to sentence four of 42 U.S.C. §405(g) as to the ALJ's analysis at step two.

2) The decision of the Commissioner is **REVERSED AND REMANDED IN PART** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to re-evaluate the weight given to Dr. Hightower's opinion and for re-determination of Plaintiff's residual functional capacity.

3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

4) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on February 8, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties